IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OSCAR JEROME BARRETT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-cv-2338-B-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Oscar Jerome Barrett seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision should be affirmed.

### Background

Plaintiff alleges that he is disabled due to bipolar disorder**,** polysubstance dependence, right lower extremity pain, and back pain. *See* Administrative Transcript ("Tr.") at 24. After his applications for disability insurance benefits and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on November 5, 2013. *See id*. at 22. At the time of the hearing, Plaintiff was fifty-three years old. He has a ninth grade education and past work experience as a van driver and quality control inspector. *See id*. at 30. Plaintiff has not engaged in substantial gainful activity since March 17, 2011. *See id*. at 24.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. *See pd.* at 31. Although the medical evidence established that Plaintiff suffered from bipolar disorder, polysubstance dependence, borderline intellectual functioning, lumbar degenerative disc disease, minimal cervical spondylosis, and chronic right lower extremity pain, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 24. The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to lift or carry twenty pounds occasionally and ten pounds frequently; sit, stand, or walk for six hours out of an eight-hour work day; climb ramps or stairs and crawl occasionally; and balance, stoop, kneel, or crouch frequently but that Plaintiff must avoid climbing ladders, ropes, or scaffolds and must avoid concentrated exposure to work at unprotected heights or with hazardous moving machinery. *See id.* at 26. The ALJ found that Plaintiff was mentally capable of sustaining attention and concentration sufficient for understanding, remembering, and carrying out routine, repetitive 1-, 2-, and 3-step tasks, with short demonstration of the assigned tasks, and that Plaintiff is limited to jobs working with things rather than people. *See id.* at 26-27.

The ALJ determined that Plaintiff is unable to perform his past relevant work as a van driver and a quality control inspector. *See id.* at 30. Relying on a vocational expert's ("VE") testimony, the ALJ found that Plaintiff was capable of working as a photocopy machine operator, a meat and poultry cutter, or a cleaner – jobs that exist in significant numbers in the national economy. *See id.* Given his

age, education, and residual functional capacity, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines. *See id.*

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in this Court. Plaintiff challenges the hearing decision on three grounds: (1) the assessment of his residual functional capacity is not supported by substantial evidence; (2) the ALJ improperly evaluated his credibility; and (3) the finding that he can perform other work in the national economy was based on an improper hypothetical question to the vocational expert.

The undersigned concludes that the hearing decision should be affirmed in all respects.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo. See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the

evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1.  The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.  The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.  The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.    If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether theclaimant can perform his or her past work despite any limitations.

5.    If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. The analysis is: First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the

impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced

Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

<u>Consideration of Impairments in RFC Determination</u>

The ALJ's RFC determination is supported by substantial evidence. In making an RFC determination, the ALJ must consider all symptoms to the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96–7p, 1996 WL 374186, at *1 (S.S.A. Jul. 2, 1996); SSR 96–8p, 1996 WL 374184, at *5. But the ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988).

The ALJ determined that Plaintiff had the mental residual functional capacity to sustain attention and concentration sufficient for understanding, remembering, and carrying out routine, repetitive 1-, 2-, and 3-step tasks, with a short demonstration of the assigned tasks. *See* Tr. at 27. She also limited Plaintiff

to jobs working with things rather than people. *See id.* The ALJ considered all symptoms and opinion evidence when she made this determination. *See id.* at 27.

The ALJ was not required to include an illiteracy limitation in Plaintiff's RFC. Plaintiff argues that the ALJ erred because she did not include a limitation for his self-proclaimed illiteracy. *See* Dkt. No. 16 at 15. Plaintiff reported to Dr. D'Angelo that he was illiterate, *see* Tr. at 739, but there is no objective medical or uncontroverted evidence that supports Plaintiff's illiteracy claim. In fact, Plaintiff testified that he was able to read a calculator and write down what it said. *See id.* at 84 ("I wrote [numbers] down; copied it off the calculator to paper."). After considering Plaintiff's testimony, the ALJ did not find that he was illiterate and, therefore, did not need to incorporate an illiteracy limitation in his RFC. *See id.* at 27-28; *see also Morris*, 864 F.2d at 336.

Physicians' Opinions

Plaintiff contends that the ALJ impermissibly discounted his examining physicians' opinions. *See* Dkt. No. 16 at 14. The opinion of an examining physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)).

But "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion" and when good cause is shown. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

The ALJ was not required to give Dr. Gregg D'Angelo's legal conclusion controlling weight. Plaintiff complains that the ALJ's RFC determination did not incorporate Dr. D'Angelo's opinion that his "ability to obtain and maintain competitive employment is rather questionable." Dkt. No. 16 at 15; Tr. at 741. Statements, like Dr. D'Angelo's, regarding a plaintiff's ability to work, are legal conclusions, not medical opinions, and are not entitled to controlling weight. *See* 20 C.F.R. § 416.927(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). The United States Court of Appeals for the Fifth Circuit has distinguished between the weight given to an examining physician's medical opinion on the nature and severity of an impairment and his opinion on whether the patient is disabled and cannot work. *See Miller v. Barnhart*, 211 F. App'x 303, 305 (5th Cir. 2005). An ALJ is not required to discuss a physician's opinion on a patient's ability to work because the ALJ need not give special weight to examining physicians' opinions that have no special significance. *See id.* (citing *Frank*, 326 F.3d at 620). And "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(e)(1). These

determinations are legal conclusions that the regulation describes as "reserved to the Commissioner.'" *Id.*

On the other hand, the ALJ afforded controlling weight to the examining physicians' medical opinions. Plaintiff complains that the ALJ rejected Dr. D'Angelo's opinion that he required on-the-job training because of his impaired memory. *See* Dkt. No. 16 at 15-16; Tr. at 741-742. But the ALJ accepted Dr. D'Angelo's opinion when she determined that Plaintiff needed short demonstrations of his tasks in order to remember them. *See* Tr. at 27. Plaintiff presents no authority that suggests that a "short demonstration" does not constitute on-the-job training nor can he argue that including the term "on-the-job training" would alter the ALJ's decision.

Plaintiff also complains that the ALJ rejected Dr. D'Angelo's and Dr. David Hershey's assessments of Plaintiff's social limitations. Dr. D'Angelo recommended that Plaintiff attend anger management treatment. *See* Dkt. No. 16 at 15-16; Tr. at 741-742. Dr. Hershey observed that Plaintiff appeared to be sullen, to be hostile-sounding, to be violent in work settings, and to have "a chip on his shoulder." Tr. at 901. The ALJ considered these opinions and noted "the evidence shows that [Plaintiff] has violent tendencies" and found that he has "moderate difficulties in this area of functioning." *Id.* at 23. She consequently limited Plaintiff "to jobs working with things rather than people." *Id.* at 26, 27; *see also* Dkt. No. 16 at 16 ("Plaintiff's social impairments are abundantly clear from the record, and the ALJ partially acknowledged this limitation by restricting Plaintiff's contact with co-workers.").

The ALJ is not required to explicitly cite to Plaintiff's need for on-the-job training and anger management to adequately reflect those limitations, because "the limitations on which the RFC is based are not required to be included verbatim in the RFC." *Cornejo v. Colvin*, EP-11-CV-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013). Therefore, Plaintiff's claim that the ALJ rejected Drs. D'Angelo's and Hershey's opinions is not persuasive.

The ALJ also considered the state agency physician's opinion. Plaintiff claims the ALJ ignored the non-examining state agency physician Dr. Caren Phelan's opinion that Plaintiff is moderately limited in his ability to perform at a consistent pace; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers; and respond appropriately to changes in the work setting. *See* Dkt. No. 16 at 15-16; Tr. at 920-21. Dr. Phelan further opined that Plaintiff "is able to understand, remember, and carry out simple instructions, make simple decision[s], concentrate for extended periods, interact with others, and respond to changes." Tr. at 922.

State agency medical physicians are considered experts in the Social Security disability program. *See Rawls v. Astrue*, No. 4:10-cv-71-BJ, 2011 WL 725279, at *11 (N.D. Tex. Mar. 2, 2011). ALJs must consider and evaluate any opinion by a state agency medical physician regarding the claimant's RFC. *See* SSR 96–6p, 1996 WL 374180 (S.S.A. July 2, 1996). The ALJ not only considered Dr. Phelan's opinion but explicitly referenced her assessment that Plaintiff's moderate limitations were not disabling. *See* Tr. at 29. Plaintiff's argument that the ALJ disregarded Dr. Phelan's opinion is unfounded.

-11-

The ALJ's Credibility Determination

The ALJ's credibility determination is supported by substantial evidence. In making a credibility determination, the ALJ must consider the objective medical evidence, as well as other factors, including:

> (1) the individual's daily activities;
> (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;
> (3) factors that precipitate and aggravate the symptoms;
> (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and
> (7) any factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96–7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); *Salgado v. Astrue*, 271 F. App'x 456, 462 (5th Cir.2008) (discussing factors). But "[t]he ALJ is not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." *Giles v. Astrue*, 433 F. App'x 241, 249 n. 30 (5th Cir.2011) (internal quotation marks omitted).

In satisfaction of the first factor, the ALJ explicitly discussed Plaintiff's daily activities, noting that he indicated that he was able to care for his personal care, make simple meals, wash dishes, wash his clothes, vacuum the floor, utilize public transportation, ride a bicycle, shop in stores for groceries, and play music for others. *See* Tr. at 25, 26.

The ALJ next considered the location of Plaintiff's pain and symptoms by noting that his physical examination revealed that the ranges of motion in his

knees, shoulders, cervical, thoracic, and lumbar spine were restricted. *See id.* at 24. But the ALJ further noted that "subsequent radiographic evidence revealed no sign of fracture." *Id.* at 28.

The ALJ also noted that Plaintiff's incarceration likely aggravated his depression because he was not receiving medication for the disease while contained. *See id.* at 27.

The ALJ addressed the fourth factor by noting Plaintiff's reports that his medication improved his symptoms without side effects. *See id.* at 28-29. But the ALJ also explained that the consultative examination indicated that Plaintiff's medication failed to alleviate his "hair-triggered" anger. *Id.* at 25.

The ALJ addressed the fifth factor when she discussed that physical therapy improved Plaintiff's spinal strains. *See id.* at 27. The ALJ further noted that Plaintiff received treatment from LifeNet and Dallas Metrocare Services for his bipolar disorder and reported that he has difficulty concentrating. *See id.* at 24.

The ALJ found that Plaintiff's credibility regarding the frequency and severity of his symptoms was reduced because it did not comport with the objective medical evidence, treatment notes, or his own statements regarding his daily activities. *See id.* at 25, 28-29.

Despite her thorough analysis, Plaintiff claims that the ALJ's credibility assessment is not supported by substantial evidence because she did not mention that he (1) has difficulty paying attention, concentrating, and understanding because of his bipolar disorder; (2) needs reminders to take his medicine and perform personal care; (3) takes baclofen, gabapentin, lithium, risperidone,

Remeron, hydrocodone, citalpram, Cyclobenzaprine, Depakote, and hydroxyzine for his various ailments; and (4) has undergone massage therapy and electroshock therapy and used a heating pad in an attempt to alleviate his back pain. *See* Dkt. No. 16 at 17-18.

Plaintiff's argument is not persuasive. First, the ALJ specifically mentioned that Plaintiff's bipolar disorder affects his concentration. *See* Tr. at 24. The ALJ also considered Plaintiff's ability to take care of himself. *See id*. at 25, 26. The ALJ referenced Plaintiff's therapy and medication, *see id*. at 24, 27-29, although she did not list the specific medications and treatments. Plaintiff offers no argument that a specific listing is required or would alter the ALJ's disability determination *See Giles*, 433 F. App'x 249 n. 30.

Therefore, the Court should affirm the ALJ's credibility assessment.

Challenge to the Vocational Expert Hypothetical

The ALJ's hypothetical was proper. During the VE's examination, Plaintiff testified that he wrote and copied numbers off a calculator in his previous job. *See* Tr. at 84. The VE elaborated that writing was a typical task in Plaintiff's prior quality control inspector and van driver positions. *See id*. at 84-85. To make her Step 5 determination, the ALJ posed the following hypothetical to the VE:

> [W]orker of the age, education, and work background of the [Plaintiff] ... capable of routine, repetitive 1-2-3 step tasks. They need a short demonstration of the assigned task and the job should be one working with things, rather than people. Also let's use math and language levels one, as defined in the Dictionary of Occupational Titles.

-14-

*Id.* at 85-86. Based on that hypothetical, the VE testified that an individual with those limitations could perform as a photocopy machine operator, a meat and poultry cutter, or a cleaner. *See id.* at 86-87.

Plaintiff argues that the ALJ's Step 5 determination is in error because the hypothetical, on which it is based, failed to account for Plaintiff's impaired memory, inability to deal with supervisors, and illiteracy. *See* Dkt. No. 16 at 19.

As an initial matter, the ALJ's hypothetical accounted for Plaintiff's impaired memory by incorporating a limit of routine, repetitive three-step tasks and demonstrations. Although she did not explicitly state that the hypothetical worker suffered from impaired memory, an ALJ's hypothetical does not have to include – verbatim – all limitations relied on. *See Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008); *see also Cornejo v. Colvin*, No. EP-11-cv-470-RFC, 2013 WL 2539710, at *9 (W.D.Tex. June 7, 2013). Plaintiff does not explain how an explicit mention of his memory impairment would have altered the ALJ's Step 5 decision.

The ALJ's hypothetical also did not need to incorporate supervisory or illiteracy limitations. The ALJ is only obligated to reasonably incorporate in her hypothetical all of Plaintiff's disabilities that she recognized. *See Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir.2001); *see also Gipson v. Astrue*, No. 3:10-cv-1413-BK, 2011 WL 540299, at *7 (N.D.Tex. Feb.11, 2011).

The ALJ did not include a supervisory limitation because she did not find that Plaintiff is unable to work with supervisors. *See* Tr. at 29. Though the medical evidence indicates that Plaintiff is moderately limited in his ability to respond appropriately to supervisors, nothing in the record suggests that this moderate

limitation is disabling. *See* Tr. at 920-22. Limiting the hypothetical to jobs "working with things, rather than people" therefore reasonably incorporates Plaintiff's moderate social limitations. *Id.* at 85.

The ALJ also did not find that Plaintiff was illiterate. Although she noted Plaintiff had an "intellectual functioning in the mildly defective rage," she reasoned that it was "not sufficiently divergent ... to suggest a formal learning disability." Tr. at 28. Further, Plaintiff testified that he could write and did so when he was a quality control inspector. *See* Tr. at 84. The VE also confirmed that Plaintiff's previous positions involved writing. *See id.* The ALJ accounted for Plaintiff's mild intellectual defect by limiting the hypothetical to math and language levels 1.

Because the ALJ posed a hypothetical question that reasonably incorporated the limitations that she found Plaintiff had, her Step 5 decision is not in error. *See Gibson*, 2011 WL 540299, at *7 ("Because the ALJ posed a hypothetical question that reasonably incorporated the disabilities she found Plaintiff had, the ALJ's finding that Plaintiff could perform other jobs in the national economy was supported by substantial evidence.").

## Recommendation

The hearing decision should be affirmed in all respects.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 7, 2016

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE